JEHIAL BEACH AND OTHERS, AS TRUSTEES OF THE FIRST METHODIST EPISCOPAL SOCIETY OF WALTON, NEW YORK, RESPONDENTS, *v.* ANDREW ALLEN, APPELLANT.

*Church edifice — sale of, on severance from realty — Statute of frauds — Guarantee — Mutuality of consideration.*

The plaintiff, a religious society, sold to the defendant its church edifice, which had been removed from its foundations and placed on rollers, so as to be removed from the lot on which it stood, and thus severed from the realty. *Held*, that it was not a sale of land, which would have required an application to be made to the court therefor, but, like any other personal property, it could be sold by the trustees.

Where, on payment for such edifice, the defendant assigned to the plaintiff a bond and mortgage on certain real estate, on which there was a prior lien, and as the value of the mortgaged property depended in a measure on a building thereon, executed an agreement that, in case such building was burned, the defendant would purchase the property for the amount of the assigned mortgage and the prior lien, at the time the mortgage became due. The building afterward having been burned, and the mortgage having become due, *held*, that the agreement was not void by the statute of frauds, as being an agreement by the defendant to buy the land of the plaintiffs, and not signed by them — such not being the meaning of the agreement — but being similar to a guarantee by the defendant to bid a certain amount, and was based on sufficient consideration. That the defense that there was no mutuality was not good, the mutuality being that the plaintiffs sold their church edifice for the assigned mortgage, with this agreement or guarantee.

APPEAL from a judgment entered upon the report of a referee.

On the 1st day of October, 1870, the plaintiffs sold to the defendant their old church edifice, which had been removed from its foundations and placed on rollers, so as to be removed from the lot on which it stood, for a mortgage executed to him by Sarah and James H. Bump on certain premises in Unadilla, Otsego county, N. Y., to secure the payment of $500, and interest, annually, dated October 16, 1869, the principal to be paid five years from date.

At the time of the sale or exchange there was a mortgage on said mortgaged premises of $1,000, executed by said Bumps to F. A. Sands, which was a prior lien to said $500 mortgage, and the existence thereof was known to all the parties. The defendant, on the sale or exchange aforesaid, executed the following instrument to the plaintiffs:

"Whereas, said Allen has this day sold and transferred to said trustees a certain indenture of mortgage made by Sarah Bump and James H. Bump on certain premises in Unadilla, Otsego county, New York, which mortgage is recorded in the Otsego county clerk's office, in book No. 78, at page 301; and, whereas, there are now certain other lien or liens on the property described in said mortgage, which are prior liens on said property; now, therefore, value received, said Allen hereby covenants and agrees to and with the said trustees, that in case the building on the premises mentioned in said mortgage are burned, that then said Allen will pay for the property mortgaged the amount of said mortgage and the amount of said prior liens, and will make such payment at the time said mortgage shall become due. In testimony whereof, said Allen has hereunto set his hand and seal the day and year first above written.

[L. S.]                        "ANDREW ALLEN.

"Signed, sealed and delivered in presence of, and the words "or damaged by fire" erased upon signing.

"N. C. MARVIN."

On the 20th of May, 1872, the main building on the mortgaged premises was destroyed by fire. The plaintiffs paid up and discharged the prior liens on the premises.

On the 17th day of August, 1871, Sarah Bump and James H. Bump conveyed the mortgaged premises to Jehial Beach, one of plaintiffs' trustees, by warranty deed, subject to the $1,000 held by Sands, which said Beach assumed to pay.

On the 22d day of October, 1872, said Beach and wife executed a deed of the mortgaged premises to the defendant, and on the 4th of November, 1872, they tendered said deed and the $500 mortgage to the defendant, with the assignment thereof, which he had made to the plaintiff, such assignment not being recorded, and also tendered to him the Sands mortgage, with a satisfaction thereof.

Defendant did not receive said papers, nor pay the amount of the lien.

And this action was brought in February, 1873, to recover the amount of the $500 mortgage, and the amount of the Sands mortgage, with interest on the same, and to have the defendant decreed to be the owner of the mortgaged premises. The plaintiffs recovered in such action the amount of the two mortgages, $2,086.63.

*D. P. Loomis,* for the appellant.

*N. C. & M. W. Marvin,* for the respondents.

LEARNED, P. J.:

This is an action brought by the trustees of a religious society, in their official capacity, to recover on an alleged cause of action belonging to the society. The name of the society is mentioned in the summons and in the title to the complaint.

The cause of action is fully set forth in the complaint, and shown to be in favor of the trustees, as such, and in behalf of the society. The written contract, on which the action is brought, is expressed to be made with the trustees of the society. The complaint alleges that "they are trustees of" etc., "a religious society, duly incorporated under the laws of the State of New York." And the answer, in express words, "admits the incorporation of the plaintiff as stated in the complaint." And no objection is taken in the answer that the action should be in the name of the society, instead of being in the name of the trustees of the society. It is probably more accurate for a religious society to sue in its corporate name, and not in the names of its trustees. Although the language of the act might seem to imply that the title to the property was in the trustees. But, at any rate, it is too late for the defendants to take this objection now, especially after the admission of their answer.

The next point of the defendants is, that the trustees had no right to sell the building without authority from the court. The building which was sold was an old church which had been removed from its foundation and placed on rollers in order that it might be taken from the lot. A new edifice had been built upon the old foundation. The old building had thus been severed from the

realty, and might, like other personal property, be sold by the trustees. The next objection is, that the agreement on which the action is brought is void by the statute of frauds, because it is an agreement by the defendant to buy the land of the plaintiffs, and they did not sign it. This is not the meaning of the agreement. The plaintiffs did not own or agree to sell the land in question. There was a good consideration for the agreement; and for this good consideration the defendant agreed that, in a certain contingency, he would pay for the property a certain sum. The defendant desired the plaintiffs to take a second mortgage, which he held on a piece of land, in exchange for their old building. The value of the mortgaged property was, to some extent, in the building upon it. And the plaintiffs wished to be sure that, when the mortgage became due, the property would sell for enough to pay off the mortgage. It might not do so if the building should previously be burned. And, therefore, the defendant, as a consideration of the exchange, agreed, in case of such burning, to pay for the property enough to satisfy all liens. This was not a contract to sell lands. No one assumed to agree to sell the land to defendant. Only he agreed that he would pay so much for it; and the consideration for this agreement was the acceptance by plaintiffs of the mortgage in exchange for the building. The defendant's agreement was similar to a guarantee, that on a foreclosure sale a guarantor will bid a certain amount.

The defendant's next objection is, that there. is no mutuality in the agreement; that the plaintiffs did not agree to sell the land. But the mutuality is this : the plaintiffs agreed to sell the defendant their old church edifice in exchange for this mortgage of the Bumps which he held; he agreeing, as a part of the transaction, and as an inducement to them to accept this second mortgage, to execute the instrument in question. The mutuality then is, that the trustees sold and delivered to him the old church edifice in consideration of his assignment to them of the mortgage, and of his also executing the agreement now in suit. The defendant further insists that the plaintiffs, a religious corporation, were not competent to make this contract. This objection is based on the notion that this was a contract for the sale of lands, which has been already disposed of. The language of the agreement is; that

" in case the buildings on the premises are burned, that then," etc.
The defendant insists that the words " *are burned* " refer to the
time of the agreement; that if a future burning had been contem-
plated the language would have been, " shall be burned ; " that the
reason is apparent, because the parties were seventeen miles from
the property, and did not know but that the buildings were in fact
burned at the time of making the agreement. As a grammatical
criticism, this objection is excellent.

It is insisted by the defendant that the deed from the Bumps to
Beach operated as a payment and merger of the mortgage. The
principle of merger is, at least in equity, to depend nearly always
on the intention of the parties and the justice of the case. But it
seems to be of little consequence how it applied here. The defend-
ant's agreement was to pay for the property the amount of the
mortgage and prior liens. The mortgage and prior liens are men-
tioned to fix the amount which he should pay. As long as he
receives a good title, by the operation of merger or otherwise, for
his money, that is enough. The same may be said in regard to
the objection that the Sands mortgage had been paid. The defend-
ant agreed to pay for the property mortgaged a certain amount.
This, of course, implies that, on paying for it, he is to receive a
title, and as long as a good title was tendered to him, he has noth-
ing to complain of in this respect. If the mortgages were extin-
guished, then the title was good so far.

The defendant was, in the contingency specified, to pay the
amount mentioned " at the time the said mortgage shall become
due." The holders of the mortgage elected, according to a provi-
sion therein, to declare the whole due on thirty days' default of
interest. The defendant insists that the agreement refers to the
time mentioned in the mortgage. But the provision that the whole
might become due on default is a part of the mortgage also. And
the defendant must be held to have contracted in reference to this
provision, as well as in reference to any other.

A more difficult question arises on the right of the plaintiffs to
the relief granted. The referee finds that the amount of the mort-
gages is $2,086.63, and he decides that the defendant is entitled to
a deed of the premises, with a satisfaction of the prior mortgage
and a surrender of the assignment of the Bump mortgage, and that

the plaintiffs are entitled to judgment for the amount above stated. The referee therefore treats the agreement as a contract for the purchase and sale of land, and gives the relief of specific performance. Now the objection to this is one which is mentioned above in another connection; and that is, that there was no contract to sell the premises by any person, still less by any owner; nor did any owner of the premises sign the contract. There is, then, no contract binding any one to a sale of the premises, and, therefore, there can be no mutual contract for the purchase and sale of the premises. The defendant, on tendering the amount due on the mortgages, could never have compelled any one to convey the land to him. It follows, therefore, that he cannot be compelled to carry out the supposed agreement of purchase and sale. This does not imply that the contract is void; and we have already seen that it had a good consideration. But the question is, what are the liabilities incurred thereby and what the remedy for a breach. If the plaintiffs had added to the contract a clause agreeing to sell the premises to the defendant at that price, and had signed the contract, then there would have been a case for the relief which the referee has given. But, evidently, the plaintiffs had no intention of assuming that obligation.

To illustrate the meaning further, let us suppose that the Sands mortgage had proceeded to a foreclosure and sale, and that on the sale some third person had bid $1,000. Then, evidently, the plaintiffs' damages would have been only the deficiency of $1,086.63. And, indeed, it is doubtful whether their damages could have exceeded their own mortgage of $500 and interest, in any case. And again, if on such a sale the property had been sold to some third party for $2,500, the plaintiffs would have suffered no damages, and could probably have recovered nothing on this contract. And yet, in that case, the defendant would have broken the terms of the contract, but the plaintiffs would not have been damnified.

We thus see that it is impossible to consider this contract, as the referee has done, an agreement for the purchase and sale of lands. It is only an agreement with one person to pay a certain sum for premises of another; and when it is broken the question is, how much is the aggrieved party damaged.

It may be compared to a guaranty that, on a foreclosure and sale, premises shall sell for such a sum. It may not be necessary, in this instance, that there should be an actual foreclosure and sale. Yet such a guaranty as has just been mentioned, will illustrate the rule of damage, and the difference between such an agreement and a contract for purchase and sale.

It may be said that the plaintiffs having become the owners of, or having control of the title, can now enforce the contract by specific performance. The answer is this: as parties to the original contract they made no agreement to sell, and, therefore, cannot compel the defendant to buy. As grantees of the Bumps, who were the owners, the plaintiffs have no contract with the defendants to enforce. The Bumps never agreed to sell to the defendant.

The question what damages the plaintiffs have sustained is not easy to determine. If there had been a foreclosure and sale the result would have determined this. But it does not seem to be a necessary condition of the contract that there should be such a foreclosure. The defendant has refused to pay for the premises the amount which he agreed to pay. For this breach he is liable to pay the consequent damages. If he had fulfilled his agreement the plaintiffs would have received the amount of their $500 mortgage and interest. This, then, is the amount that they have been damnified by his breach.

The plaintiff, therefore, should have a judgment to recover against the defendant the amount of the $500 mortgage and interest. This will be without prejudice to the rights, if any, which the defendant may hereafter have, after such payment, to claim a right to have an assignment of the $500 mortgage. We do not determine the rights and equities of the several parties in case any suit should be brought for that purpose. No costs of this appeal to either party.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment modified, order to be settled by LEARNED, P. J., in accordance with opinion.